**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**FASIL TAKLETSADIK**                          **CASE NO. 3:26-CV-00517 SEC P**

**VERSUS**                                                  **JUDGE JERRY EDWARDS**

**BRYAN PATTERSON, ET AL**                 **MAGISTRATE JUDGE LEBLANC**

<u>**REPORT AND RECOMMENDATION**</u>

Currently before the court is a petition for writ of habeas corpus filed by Fasil Takletsadik ("Petitioner") through counsel pursuant to 28 U.S.C. § 2241.  Rec. Doc. 1.  The Government filed a response on April 17, 2026.  Doc. 17.  Petitioner filed a reply.  Doc. 18.  The matter is ripe for review.  For the reasons which follow, **IT IS RECOMMENDED** that this habeas corpus action be **GRANTED**.

**I.    FACTUAL BACKGROUND**

Petitioner was born in Ethiopia in 1958. According to the Petition, in 1979, when he was 21 years old, he fled Ethiopia to Germany due to political persecution.  Doc. 1-10, p. 2, ¶¶ 4, 5. He was granted asylum in Germany in 1982 and eventually became a resident. *Id*. He worked for 16 years at an American military base in Germany. *Id*. Because he was subjected to racially motivated harassment in Germany, in May 1995 he left Germany and came to the United States on a visitor visa.  *Id*. ¶¶ 6–7. He applied for asylum in the United States and in August 2004 an immigration judge denied his application for asylum after concluding he was "firmly resettled" in Germany and could return there. *Id*. at ¶ 7.

Sometime around 2008, while subject to a final order of removal, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner. In February 2009, Petitioner moved to reopen

his removal order based on changed circumstances. *Id*. ¶ 10.  The Board of Immigration Appeals ("BIA") reopened those proceedings in June 2009. *Id*. The BIA recognized that Petitioner was firmly resettled in Germany, but reopened proceedings so that he could seek withholding of removal and protection under the Convention Against Torture.  *Id*.  On July 20, 2009, while Petitioner was still pursuing his claim to relief from deportation, ICE released him on his own recognizance subject to Intensive Supervision Appearance Program ("ISAP") reporting requirements, and Petitioner returned to his home in Maryland. *Id*. ¶ 11; *see also* doc. 1-11, Order of Release on Recognizance.   On April 20, 2012, an immigration judge granted Petitioner withholding of removal under the Immigration and Nationality Act ("INA").  *Id*. at ¶ 12; *see also* doc. 1-12, IJ Order. ICE waived appeal, and Petitioner's grant of relief became final that day.  *Id*. ICE did not re-detain him. Doc. 1-10 at ¶ 12.

When Petitioner was granted withholding of removal, his release became governed by 8 C.F.R. § 241.4. *See* 8 C.F.R. § 241.4(b)(3) ("[Noncitizens] granted withholding of removal under section 241(b)(3) of the Act . . . who are otherwise subject to detention are subject to the provisions of this part 241.").  He applied for employment authorization based on his withholding of removal, and he maintained employment authorization from 2012 until his detention in 2025. *Id*. at ¶ 13. Petitioner eventually got a job working in the commissary of Andrews Air Force Base in Prince George's County, Maryland. *Id*. ¶ 15.  On June 25, 2025, he attempted to renew his security pass to get on the base for work. *Id*. ¶ 16.  When he showed authorities at the base his work permit and social security card, ICE was contacted about whether Petitioner should be detained, at which time ICE took Petitioner into custody.  *Id*. at ¶ 17.

ICE held Petitioner for four days in Baltimore without providing him with any reasons for the revocation of his release or giving him any opportunity to rebut those reasons. *Id*.  Without

giving him a notice of revocation of release or any other paperwork, ICE transferred Petitioner to the Jackson Parish Correctional Center in Jonesboro, Louisiana, where he has been ever since. *Id*. at ¶ 20.

At the time he filed the instant Petition, Petitioner had been detained for over six months. As of the date of this Order, he has been detained for almost a year.  Petitioner argues his continued detention violates 8 U.S.C. § 1231(a)(6) as interpreted by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001), because his removal is not reasonably foreseeable given the grant of withholding of removal and the unlikelihood of removal to a third country. Under *Zadvydas* and the regulations implementing it, Petitioner asks the Court to order his immediate release under conditions of supervision.[1]

The Government responded to the Petition stating that, since Petitioner was taken into ICE custody on June 25, 2025, ICE has been attempting to remove Petitioner to a third country.  Doc. 17, p. 2.  On that date, ICE issued Requests for Acceptance of Alien to Germany, El Salvador, and Djibouti. Germany declined to accept Petitioner. Doc. 17-1, ¶¶ 16-18.  Respondents represent that ICE Enforcement and Removal Operations ("ERO") continues to work with the Department of State and ERO Headquarters Removal division to identify an alternative country of removal.  *Id*. at ¶ 19.

Petitioner filed the instant petition challenging the duration of his detention under 28 U.S.C. § 2241.  The Government maintains there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future and, thus, his detention is lawful.

---

[1] Petitioner raises alternative bases for release that the Court need not address herein.

3

## II.    LAW AND ANALYSIS

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the extension and application of that decision to aliens who are inadmissible by *Clark v. Martinez,* 543 U.S. 371 (2005), the United States Supreme Court adopted a six-month period for which the institutional detention of an alien, found within the United States and ordered removed pursuant to various provisions of Section 237(a) of the Act [8 U.S.C. § 1227(a)], is presumptively reasonable, and concluded that, "* * * once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. In the words of the Court:

> [T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.  And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

*Zadvydas*, 533 U.S. at 699-700 (citations omitted).

The Supreme Court clearly indicated that the lapse of the presumptive period does not mandate release and concluded that, "[t]o the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The United States Fifth Circuit Court of Appeals has recognized that "[t]he [Supreme] Court's decision creates no specific limits on detention, however, 'as an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future'." *Andrade v. Gonzales*, 459

F.3d 538, 543 (5th Cir. 2006); *see also Agyei–Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).

Thus, in order to state a claim for relief under the *Zadvydas* decision, an alien must establish: 1) post-removal-order detention in excess of six months at the time of the filing of his or her petition; and 2) good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Andrade*, 459 F.3d at 543; *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. To meet his burden under the second prong, an alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, 03-1293, 2003 WL 21805198, *4 (N.D. ex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)). To shift the burden to the Government, an alien must demonstrate that "the circumstances of his status" or the existence of "particular individual barriers to his repatriation" to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* If the alien fails to come forward with an initial offer of proof, the petition is ripe for dismissal. *Akinwale*, 287 F.3d at 1051.

### A. Length of Detention

An alien's post-removal-order detention under 8 U.S.C. § 1231 is limited to a period reasonably necessary to bring about that alien's removal from the United States. *Zadvydas,* 533 U.S. at 689. The United States Supreme Court has found that once the removal period begins, six months is a reasonably necessary period to remove the alien. *Id.* at 701. After six months, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *Id.* It is undisputed that Petitioner's detention has surpassed the six-month presumption

of reasonableness under *Zadvydas*.  Therefore, the analysis shifts to whether Petitioner's removal is foreseeable at present.

### B.  Petitioner's Initial Burden

Respondents do not contest that Petitioner has been in custody beyond the presumptively reasonable six-month period.  Instead, they argue he is not entitled to relief because he fails to show good reason to believe that his removal to a third country is unlikely in the reasonably foreseeable future.

No dispute exists that Petitioner's application for withholding of removal under INA § 241(b)(3) has been granted.   When an alien is granted withholding-only relief, they may not be removed to the designated country of removal until conditions change in that country; however, the noncitizen still may be removed at any time to another country. INA § 241, 8 U.S.C. § 1231. Respondents represent that since Petitioner was taken into custody on June 25, 2025, ICE has been attempting to remove Petitioner to a third country by issuing Requests for Acceptance of Alien to Germany, El Salvador, and Djibouti.  While Germany declined to accept him, ERO continues to work with the Department of State and ERO Headquarters Removal division to identify an alternative country of removal.

As Petitioner has identified that he is not a citizen of any other country and ICE has not identified a third country that will accept him, the undersigned finds that he has met his initial burden under *Zadvydas*.  *See Misirbekov v. Venegas,* No. 25-cv-168, 2025 U.S. Dist. LEXIS 166126, 2025 WL 2450991, at *1-2 (S.D. Tex. Aug. 15, 2025) (finding good reason to believe there was no significant likelihood of removal in the foreseeable future where the petitioner was granted CAT withholding from Kyrgyzstan and had no citizenship or ties to any other country); *see also Leksina v. Rice*, No. 6:25-cv-1767, 2026 U.S. Dist. LEXIS 48728 (W.D. La. Jan. 23,

6

2026), *report and recommendation adopted*, 2026 WL 642195 (W.D. La. Mar. 6, 2026) (finding that Petitioner met her initial burden by identifying that she is not a citizen of another country and ICE has not identified a third country that will accept her).

### C. Respondents' Burden

The burden thus shifts to Respondents, *Zadvydas*, 533 U.S. at 701, who argue that reasonably foreseeable future is not a static concept. Instead, they contend that "it is fluid and country specific, significantly depending on the diplomatic relations between the United States and the country that will receive the removed alien. The processes for obtaining a temporary travel document from another country are complex, multi-faceted, and include considerations of diplomacy that are beyond the control of ICE." Doc. 17, p. 4. Moreover, they assert that, even a "'lack of visible progress … does not in and of itself meet [the petitioner's] burden of showing that there is no significant likelihood of removal.' *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002). 'It simply shows that the bureaucratic gears of the [federal immigration agency] are slowly grinding away.'" *Id*. (citing *Khan v. Fasano*, 194 F.Supp.2d 1134, 1137 (S.D. Cal. 2001); *Idowu v. Ridge*, No. 3-cv-1293, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003).

Courts in this District have held that the Government's burden to furnish evidence demonstrating that removal is likely in the reasonably foreseeable future is not met by a pending request for travel documents, alone. *See, e.g., Johnson v. Young,* No. 12-cv-2339, 2013 U.S. Dist. LEXIS 53326, 2013 WL 1571938, at *2 (W.D. La. Feb. 11, 2013) (finding argument that Jamaican consulate had not yet refused to issue travel documents insufficient to meet the government's burden), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 53313, 2013 WL 1571272 (Apr. 12, 2013); *Fermine v. Dir. of Immigr. & Customs Enf't*, No. 06-cv-1578, 2007 U.S. Dist. LEXIS 61516, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (finding no significant

likelihood of removal in the reasonably foreseeable future where ICE was continuing efforts to obtain a travel document and Trinidad had not yet refused the request); *see also Yaro v. Mukasey,* No. 5:08-cv-593-XR, 2008 U.S. Dist. LEXIS 88936, 2008 WL 4816657, at *3 (W.D. Tex. Oct. 30, 2008) (finding petitioner's removal likely in the foreseeable future where Malian embassy had not refused to issue travel documents or failed to respond to ICE, but instead acknowledged receipt of application and provided general timeline for investigation and decision). The undersigned finds these decisions persuasive—Respondents cannot carry their burden with the outstanding requests alone.

Moreover, the longer a request for travel documents remains pending without any action by the foreign government, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701; *see also Young*, 2013 U.S. Dist. LEXIS 53326, 2013 WL 1571938, at *1-2 (finding removal not reasonably foreseeable where travel document request was pending for nine months); *Fermine*, 2007 U.S. Dist. LEXIS 61516, 2007 WL 2284606, at *4 (same, fifteen months).

In his Reply to the Respondents, Petitioner notes that Respondents' efforts to remove him amount to three unanswered or rejected requests made almost one year ago. Doc. 17-1; *see also Rodriguez Romero v. Ladwig*, 2026 WL 321437, (M.D. La. Feb. 6, 2026) at *16 (stating that generalized "ongoing efforts to deport" to a third country are insufficient under *Zadvydas* to justify ongoing detention). The Court agrees with Petitioner's appreciation of the status of his detention, noting that the Respondents have taken no action to remove Petitioner in nearly a year, since they sent requests for acceptance to three countries the day he was re-detained. *See Uriostegui Rios v. Trump*, 2026 WL 810556 (W.D. La. March 24, 2026), at *2 (finding the government failed to meet its burden where "despite many requests, no country has agreed to accept [p]etitioner"); *Nuraetov*

*v. Bondi,* No. 1:25-CV-1740, 2026 WL 878740, at *2 (W.D. La. Mar. 13, 2026) (finding that the government failed to meet its burden when there was "no affidavit, declaration, other evidence that a third country has been identified, contacted, or is considering a request from the Government to accept this petitioner and issue travel documents for his removal"), *report and recommendation adopted*, 1:25-CV-1740, 2026 WL 872253 (W.D. La. Mar. 30, 2026); *Nguyen v. Bondi*, 2025 WL 3120516, at *7 (requiring individualized evidence about the specific petitioner to demonstrate foreseeability of removal); *Marquez-Amaya v. Thompson*, No. 5:25-cv-1501, 2025 WL 3654327, at *6 (W.D. Tex. Dec. 15, 2025) (granting release where petitioner was "pending approval for removal to Mexico" with no specific removal plan in place); *Gomez-Simeon v. Bondi*, No. 25-cv1460, 2025 WL 3470872, at *1, *5 (W.D. Tex. Nov. 24, 2025) (granting release where "Respondents have not identified a country willing to accept" the petitioner, who won CAT and finding detention not justified in the absence of "a removal plan"). The Respondents have not provided any such evidence of a concrete plan for removal here. *Compare* doc. 17-1, at ¶ 19 (stating "ERO continues to work with the Department of State and Headquarters Removal division to identify an alternative country of removal") *with Zadvydas*, 533 U.S. at 702 (rejecting "good faith efforts to effectuate . . . deportation"). Nothing in Respondents' submissions shows that any alternative country will accept Petitioner for removal.

Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires Petitioner's release from detention. The Court finds no need to address any other claim or challenge.

## III.    CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the petition be **GRANTED** and Petitioner be **RELEASED**, subject to supervision under regulations prescribed by the Attorney General."[2]

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers this 15th day of June, 2026.

_____
**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] 8 U.S.C. 1231(a)(3).

10